Filed 12/28/21  P. v. Mack CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C091593 |
| Plaintiff and Respondent, | (Super. Ct. No. CH036748) |
| v. | |
| ANTHONY EDWARD MACK, | |
| Defendant and Appellant. | |

As defendant Anthony Edward Mack was being received into High Desert State Prison, correctional officers found two sharpened glass instruments concealed on his person.  A jury found defendant guilty of possession of a weapon in prison (Pen. Code, § 4502, subd. (a))[1] and found true allegations that he suffered three prior strike convictions, at least one of which qualified as a "super strike" within the meaning of the Three Strikes law.  The court sentenced defendant to an indeterminate term of 25 years to life.

On appeal, defendant argues the trial court's judgment must be reversed because the court erred in revoking his right to self-representation, and that defense counsel

---

[1]     Undesignated statutory references are to the Penal Code.

1

rendered ineffective assistance by failing to seek bifurcation of the prior conviction allegations. He also claims he was improperly subjected to an indeterminate life sentence under the Three Strikes law. Finally, he challenges various fines and fees that were imposed during sentencing.

As discussed below, we shall modify the judgment with respect to the fines and fees imposed, and otherwise affirm.

BACKGROUND FACTS AND PROCEDURE

An information charged defendant with possession of a weapon (specifically, a sharp instrument) in prison (§ 4502, subd. (a); count I), and alleged that he had suffered three prior strike convictions within the meaning of the Three Strikes law (§ 667, subds. (b)-(i)). Defendant pleaded not guilty.

A.    *Prosecution evidence*

On March 29, 2018, Correctional Officer Ricky Reynolds was using a low-dose body scanner at High Desert State Prison to scan prisoners being received from California State Prison, Sacramento. When defendant was scanned, Reynolds noticed two dark objects beneath defendant's clothing that appeared to be inmate-manufactured weapons: one in defendant's groin area and the other in the vicinity of his knee. Reynolds moved defendant to a holding cell and called for an investigative services unit officer.

Correctional Officer Clinton Morris from the investigative services unit arrived and spoke with defendant. As a result of that conversation, defendant reached into his waistband area, near his groin, and produced a glass weapon, approximately eight and a half inches long, with an "extremely sharp" tip. An officer then removed a second weapon from within a neoprene knee brace defendant was wearing. The second weapon, also made of glass, was approximately five and a half inches long, with a sharp, pointed tip. In Officer Morris's opinion, both instruments were capable of causing great bodily injury. A surveillance video of the encounter with defendant was played for the jury.

2

Arin Muñoz, a case records manager at High Desert State Prison, attested to the conviction records in defendant's section 969b packet. The records demonstrated that on August 1, 1983, defendant was convicted in Alameda County of two counts of kidnapping for purposes of robbery (former § 209, subd. (b)), with enhancements on each count for using a deadly or dangerous weapon (former § 12022, subd. (b)); six counts of "forcible rape" (§ 261), with enhancements for using a deadly or dangerous weapon as to one count (former § 12022, subd. (b)) and using a firearm or other deadly weapon as to all six counts (former § 12022.3, subd. (a)), as well as a special allegation of rape in concert as to one count (§ 264.1); and one count of oral copulation (former § 288a), with an enhancement for using a firearm or other deadly weapon (former § 12022.3, subd. (a)).

B.    *Defense evidence*

Defendant testified in his own defense. According to defendant, the weapons could not have come from him because he was strip searched before his transfer from California State Prison, Sacramento. He claimed to have been "set up" and suggested some form of "misconduct" occurred during the transfer. He denied there was any proof that he possessed the weapons and claimed that the person shown in the video was "not necessarily" him.

Defendant further claimed that he previously had problems at High Desert State Prison. He testified that in 2016 he was attacked there by about 18 officers, and then written up for staff assault. Defendant claimed that Officer Morris was one of the officers involved in that incident.

Defendant insisted that the records of his prior convictions were forged and fraudulent.

C.    *Verdict and sentencing*

The jury found defendant guilty of possessing a weapon in prison, and found true the allegations that defendant suffered three prior strike convictions: for forcible rape under section 261; for oral copulation under former section 288a; and for kidnapping

3

under former section 209, subdivision (b). The trial court denied defendant's request to strike his prior strike and sentenced him to a term of 25 years to life, consecutive to any incomplete prior sentence. Among other fees, the trial court imposed a $300 restitution fine and a $600 presentence investigation report fee. Defendant timely appealed.

DISCUSSION

I

*Termination of Self-Representation*

Defendant contends the trial court erred in terminating his right of self-representation. We disagree.

A. *Additional background*

On May 16, 2019, the date scheduled for defendant's preliminary hearing, defendant moved to discharge his counsel and represent himself under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

At the *Faretta* hearing, the court questioned defendant about his election to waive counsel and advised him of the potential drawbacks of self-representation, including that his ability to prepare a defense could be impeded by his custody status. Defendant responded that access to his legal materials was "part of the problem." He complained that prison officials were deliberately obstructing his ability to access his personal property, and suggested that getting access to his property went "hand in hand" with his request for self-representation. The court explained to defendant that his criminal case has "no bearing" on any administrative issues he may have with prison staff and cautioned him not to use his case to try to gain "leverage" over the Department of Corrections and Rehabilitation.

The court ultimately granted the *Faretta* motion, but it expressed concerns about whether defendant "understands that [it is] going to address the case at hand and not his other issues or displeasures that he may have with the Department of Corrections [and Rehabilitation] with regards to his personal property . . . ." The court warned defendant

4

that if it gets to a point where defendant is "unable or unwilling to abide by the court and the courtroom protocol and is disruptive in the process of this case," the court may revoke his ability to represent himself and appoint counsel.

On May 23, 2019, when the parties appeared for defendant's preliminary hearing, defendant asserted that he was in court to deal with "outstanding motion issues." The court admonished him—as it had twice before—that no motion had been properly filed or served, and asked defendant if he was ready to proceed with the preliminary hearing. Defendant interjected, "No, I'm . . . here to let you know if you proceed and you conduct this preliminary hearing, you're acting without jurisdiction." As the court attempted to proceed with the preliminary hearing, defendant interrupted the proceedings. The court warned defendant that if he continued to speak out of line, there would be "repercussions."

At the conclusion of the preliminary hearing, the court held defendant to answer and ordered him to personally appear for arraignment on May 31, 2019. Defendant asked if he could raise his motion issues at that time, and the court said he could not.

Defendant failed to appear for arraignment on May 31, 2019. The prosecutor indicated that Clayton Prater (Prater), the court liaison officer, told him that defendant had refused to exit his cell. The court continued the arraignment, issued a bench warrant, and ordered defendant to personally appear on June 13, 2019.

Defendant again failed to appear on June 13, 2019. The prosecutor informed the court that defendant was refusing to exit his cell. The matter was continued until the next day.

On June 14, 2019, defendant appeared for arraignment. The court entered defendant's not guilty plea, set trial for July 29, 2019, and set a trial readiness conference for July 18, 2019. The court indicated that any pretrial motions filed by defendant would be heard at the July 18 readiness conference. Defendant requested that his motions be heard before the trial readiness conference, but the court denied his request.

5

On July 18, 2019, defendant failed to appear for the trial readiness conference. The prosecution reported that prison officials attempted to get defendant to court but he chose not to appear. The matter was continued to July 25, 2019, and defendant was ordered to personally appear. The previous bench warrant was renewed.

Defendant appeared at the July 25, 2019 trial readiness conference, but the court noted that the matter was "starting late this afternoon because [defendant] apparently was not willing to come out of his cell." The court also noted that defendant had refused to appear in court on three prior occasions. The court stated that defendant's "continual refusal to come out of [his] cell and come to court appearances [was] frustrating the procedures of the Court, and the timely and orderly manner of proceedings." The court indicated that it was inclined to terminate defendant's self-representation. The court gave defendant an opportunity to explain his behavior.

Defendant told the court that he was having "discrepancies" with the officers when they came to transport him to court. These discrepancies related primarily to how he was dressed and whether his legal papers would be searched before being transported to court. Defendant admitted that he argued with the officers about these issues, but he denied "refusing" to come to court and claimed the officers simply decided not to transport him to court.

The court asked Prater, who was present in court, to respond to defendant's claims. Prater stated, "It's my understanding that [the correctional officers] show up, just like they do for every inmate that's scheduled for court, to process them through and bring them out to court[,] which is outside of the secure perimeter. [¶] When they show up at his door, he's being argumentative, he's refusing to come out. They have other inmates they need to pick up, get to court. So he's refusing to come out, they can't stand there and argue all day, they go on to the next inmate." Defendant objected to Prater's statement as hearsay, but, without giving the court an opportunity to address his

6

objection, defendant began expounding on his complaints about prison staff. The following colloquy then ensued:

"THE COURT: Are you telling me that you've never refused to come out of your cell before?

"THE DEFENDANT: I have never actually said well, I'm not going to court. They decide that they weren't going to bring me to court.

"THE COURT: Have you been argumentative with them?

"THE DEFENDANT: Yeah, of course, because they're asking me to do things that I think [are] unreasonable."

The trial court decided to terminate defendant's self-representation, finding that defendant had repeatedly and deliberately frustrated the processes and workings of the court.

B.  *Analysis*

Under *Faretta, supra*, 422 U.S. 806, a defendant has the constitutional right to forgo the constitutional guarantee of the assistance of counsel and represent himself or herself at trial. (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1515 (*Kirvin*).) "The primary motivation for the *Faretta* rule is respect for the accused's freedom of choice to personally conduct his own defense. [Citations.]" (*People v. Joseph* (1983) 34 Cal.3d 936, 946.) When an unequivocal request to proceed in propria persona (pro per) is timely interposed, a trial court " ' "must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." ' " (*People v. Butler* (2009) 47 Cal.4th 814, 824.) Erroneous deprivation of the right of self-representation is reversible per se. (*Ibid*.; accord, *People v. Welch* (1999) 20 Cal.4th 701, 729 (*Welch*).)

However, the right to self-representation is not absolute. (*People v. Becerra* (2016) 63 Cal.4th 511, 518 (*Becerra*).) If a defendant is unable or unwilling to abide by procedural rules and courtroom protocol, the government's interest in ensuring the

7

integrity and efficiency of trial may outweigh the defendant's interest in acting as his or her own lawyer. (*Becerra, supra*, at p. 518; *Welch, supra*, 20 Cal.4th at p. 734.) A trial court may terminate self-representation by a defendant who engages in deliberate dilatory or obstructive behavior that threatens to subvert the core concept of a trial or to compromise the court's ability to conduct a fair trial. (*Becerra*, at p. 518, citing *People v. Carson* (2005) 35 Cal.4th 1, 10 (*Carson*); accord, *Welch*, at pp. 734-735.)

In determining whether termination is appropriate, our Supreme Court has explained that a trial court should consider several factors, including (1) the nature of the misconduct and its impact on the proceedings; (2) the availability and suitability of alternative sanctions; (3) whether the defendant was warned that particular misconduct would result in termination of pro per status; and (4) whether the defendant intentionally sought to disrupt and delay the trial. (*Becerra, supra*, 63 Cal.4th at p. 518.) No one factor is dispositive. Each case must be evaluated based on the totality of the circumstances. (*Carson, supra*, 35 Cal.4th at pp. 10, 12.)

There is no requirement that a defendant's misconduct disrupt the trial itself. (*Carson, supra*, 35 Cal.4th at p. 10.) A court may consider misbehavior during pretrial proceedings as well as a defendant's out-of-court misconduct. (*People v. Watts* (2009) 173 Cal.App.4th 621, 629-630; *Carson*, at pp. 9, 11-12.) "Ultimately, the effect, not the location, of the misconduct and its impact on the core integrity of the trial will determine whether termination is appropriate." (*Carson*, at p. 9.)

Regardless of the court's reasons for terminating a right of self-representation, there must be an adequate record to permit meaningful judicial review. (*Becerra, supra*, 63 Cal.4th at p. 519.) For in-court misconduct, the court reporter's transcript generally will be sufficient. (*Carson, supra*, 35 Cal.4th at p. 11.) In contrast, when termination is predicated on a defendant's out-of-court misconduct, it is incumbent on the trial court to

8

"document its decision" with supporting evidence.[2] (*Ibid.*) In particular, the record should explain the precise misconduct on which the trial court based the decision to terminate and how that misconduct threatened the core integrity of the trial. (*Ibid.*)

A trial court has wide discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion " 'will not be disturbed in the absence of a strong showing of clear abuse.' " (*Welch, supra*, 20 Cal.4th at p. 735; accord, *Becerra, supra*, 63 Cal.4th at p. 518.) We "accord due deference to the trial court's assessment of the defendant's motives and sincerity as well as the nature and context of [the] misconduct and its impact on the integrity of the trial . . . ." (*Carson, supra*, 35 Cal.4th at p. 12.) If the record reasonably supports the trial court's findings, the court's decision to terminate self-representation must be upheld. (*Welch*, at p. 735.)

We conclude the record in this case reasonably supports the trial court's finding that defendant deliberately frustrated the processes and workings of the court. At the outset, when the trial court granted defendant's request for self-representation, it expressed concern that defendant might seek to merge his prison administrative grievances with his criminal case and told defendant that he could not use his criminal case to gain leverage over the Department of Corrections and Rehabilitation. The court warned defendant that if he was disruptive, his pro per status may be revoked.

Despite the court's warning, just one week after granting the *Faretta* motion, defendant tried to use the date set for his preliminary hearing to argue the merits of two pretrial motions, and argued that the court lacked jurisdiction to proceed, even though the court previously had ruled the motions were not properly served or filed. Defendant then failed—repeatedly—to appear in court due to his disagreements with prison staff who came to transport him. Although defendant denied specifically telling officers he would

---

[2] Unsubstantiated representations, rumor, speculation, and innuendo will not suffice. (*Carson, supra*, 35 Cal.4th at p. 11.)

not come to court, he admitted arguing with officers until they became frustrated and left. And it is undisputed that this happened at least three times, in derogation of court orders for him to appear. Defendant had an opportunity to correct his behavior; he simply chose not to. In other words, the record shows that defendant deliberately put his prison administrative grievances above his obligations to the court, and did so repeatedly, in contravention of warnings and court orders.[3] The trial court reasonably concluded that defendant's actions were frustrating (and likely to continue frustrating) the processes and workings of the court. The totality of this evidence leads us to conclude the trial court did not abuse its discretion.

We find support for our conclusion in *Kirvin, supra*, 231 Cal.App.4th 1507, where the trial court denied a defendant's request for self-representation due to the defendant's repeated refusals to come to court and meet with a court-appointed mental health expert. (*Id*. at pp. 1512-1513, 1515.) The Court of Appeal affirmed, finding that the trial court acted within the "bounds of reason" in concluding that defendant's willful absences seriously threatened the core integrity of the trial. (*Id*. at pp. 1516-1517.) The court explained: "An in-custody defendant who wishes to represent himself but demonstrates a pattern of refusing to come to court or to leave his cell when ordered puts the trial court on the horns of a dilemma: That court must either (1) halt the court proceedings whenever the defendant decides to remain in his cell (thereby inconveniencing the jurors and witnesses, and playing havoc with the court's busy calendar), or (2) face the unpleasant prospect of proceeding with trial in the absence of the defendant or anyone representing him (in derogation of the strong statutory and constitutional preference that

---

**3** Defendant's in-court behavior, prior to termination, further supports the inference that he was unable or unwilling to conform to the relevant procedural rules. For example, the record contains several examples of defendant interrupting or delaying court proceedings to reargue positions even after the court had ruled. Defendant admits in his reply brief that he was arguing with the court "all the time."

10

criminal defendants be present during a trial in which their liberty is on the line).
[Citations.] If, as our Supreme Court has noted, a defendant's refusal to sit in the
appropriate place in the courtroom is a basis for denying the right to self-representation
[citation], the defendant's total absence from the courtroom surely is." (*Kirvin, supra*,
231 Cal.App.4th at p. 1516; see also *People v. Jenkins* (2000) 22 Cal.4th 900, 961-963
[no abuse of discretion in denying *Faretta* motion where defendant threatened to disrupt
proceedings, argued with court, and attempted to influence court rulings by absenting
himself].)

The same reasoning applies here. Defendant repeatedly and deliberately refused
to come to court because of collateral disagreements with prison staff. His actions
disrupted and delayed pretrial court proceedings, including his arraignment, and
threatened to interfere with his jury trial. Under the circumstances, the court was justified
in terminating self-representation.

Defendant further argues the trial court abused its discretion by relying on
inadmissible hearsay evidence, namely, Prater's explanation of why defendant refused to
exit his cell. But the trial court never ruled on defendant's hearsay objection because
defendant changed the subject. Defendant's failure to obtain a ruling is fatal to his
contention on appeal. (*People v. Hayes* (1990) 52 Cal.3d 577, 619 ["a party objecting to
the admission of evidence must press for an actual ruling or the point is not preserved for
appeal"].)

Finally, defendant argues that the court abused its discretion because it refused to
consider other, less drastic alternatives. But defendant was told at the outset that he could
not use his criminal case as "leverage." Nevertheless, he was argumentative in court,
deliberately missed at least three court appearances, and delayed the start of a fourth in
defiance of multiple court orders. Again, *Kirvin* is instructive. In *Kirvin*, the defendant
challenged the denial of his *Faretta* motion because the trial court did not specifically
consider alternative remedies. (*Kirvin, supra*, 231 Cal.App.4th at pp. 1516-1517.) The

11

Court of Appeal held that the defendant's repeated refusals to come to court and obey court orders so seriously threatened the core integrity of the trial that there was no need for additional warnings or to consider alternative remedies. (*Ibid.*) In essence, "the trial court had no alternatives to consider." (*Id.* at p. 1517.) We reach the same conclusion here.

II

*Ineffective Assistance of Counsel*

Defendant claims that he received ineffective assistance of counsel because defense counsel did not seek to bifurcate the trial of his prior convictions.[4] Without deciding whether counsel's performance was deficient, we reject the claim because there was no prejudice.

To establish ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) A reviewing court may examine the issue of prejudice first. "If a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. [Citation.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.)

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland, supra*, 466

---

**4** Defendant also complains that defense counsel failed to redact the section 969b packet to exclude convictions not alleged in the information. We may disregard this contention because it was not properly presented under a discrete heading. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) In any event, it would not change our conclusion.

12

U.S. at p. 693; *Ledesma, supra*, 43 Cal.3d at p. 217.) The defendant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. (*Strickland*, at p. 694; *Ledesma*, at pp. 217-218.) Here, defendant cannot establish prejudice from the failure to bifurcate the trial on his prior convictions.

Defendant was charged with possessing a sharp instrument in violation of section 4502, subdivision (a), which provides, in relevant part: "Every person who, . . . while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possesses or carries upon his or her person or has under his or her custody or control any . . . sharp instrument, . . . is guilty of a felony . . . ." (§ 4502, subd. (a).) The prosecution did not need to prove that defendant used or intended to use the sharp instrument as a weapon. (*People v. Strunk* (1995) 31 Cal.App.4th 265, 272; CALCRIM No. 2745.) And for the requisite guilty mind, the jury needed only to find that defendant knew the instrument was in his possession, custody, or control, and knew that the object was a sharp instrument that could be used as a stabbing or slashing weapon. (CALCRIM No. 2745.)

The evidence in this case was overwhelming. While defendant was being received into the prison, a correctional officer using a low-dose body scanner detected two dark objects underneath defendant's clothing that appeared to be inmate-manufactured weapons. A subsequent search of defendant resulted in the discovery of two sharpened glass instruments concealed on his person. The officer who conducted the search testified that both instruments could cause great bodily injury. Photos of the body scan and a video of the search were shown to the jury. This was strong evidence of defendant's guilt.

In contrast, defendant's defense was weak. He claimed to have been "set up," but never explained how the sharp instruments came into his possession. He insisted that someone had forged or faked the records of his prior convictions to keep him in prison.

13

His testimony lacked credibility. In short, the evidence of his guilt was overwhelming, and no reasonable juror could have found otherwise.

Moreover, the trial court properly instructed the jury to consider evidence of his prior convictions only for the purpose of deciding whether defendant "was previously convicted of the crimes alleged," and not "as proof that the defendant committed any of the crimes with which he is currently charged or for any other purpose." (CALCRIM No. 3100.) The jury is presumed to have followed that instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Even if defense counsel had successfully bifurcated the prior conviction allegations, there is no reasonable probability of a more favorable outcome for defendant. We thus reject his claim of ineffective assistance of counsel.

## III

### *Notice of Three Strike Sentence*

Defendant next contends that his sentence must be reversed because he was not adequately notified of the prosecution's intent to seek an indeterminate life sentence under the Three Strikes law (§ 667, subds. (b)-(i)).[5] We again disagree.

A.    *Additional background*

1.    *Background law*

Under the original Three Strikes law, as enacted in 1994, a felony defendant "previously convicted of two qualifying strikes was subject to a life term if he was subsequently convicted of *any* new felony, regardless of whether it was a serious or violent one." (*People v. Frierson* (2017) 4 Cal.5th 225, 230.) In 2012, the voters

---

[5]    The Three Strikes law consists of two, nearly identical statutory schemes designed to increase the prison terms of repeat felons: a legislative version, codified as section 667, subdivisions (b) through (i), and an initiative version, codified as section 1170.12. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504 (*Romero*).) Consistent with the information, we shall address only the legislative version.

adopted Proposition 36, the Three Strikes Reform Act of 2012 (the Reform Act), which amended the Three Strikes law to reduce the punishment for a third strike defendant whose current offense was not a serious or violent felony. (*People v. Johnson* (2015) 61 Cal.4th 674, 679, 681.) "In that circumstance, unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony," as if there were only one prior qualifying strike. (*Id*. at p. 681.) In other words, when the current offense is not a serious or violent felony, a defendant with two or more prior strikes nevertheless will be sentenced as if the defendant had only one prior strike (i.e., as a second strike defendant), unless one of the enumerated disqualifying exceptions applies.

The disqualifying exceptions relate either to the defendant's current offense, or to the defendant's prior strike convictions. (§ 667, subd. (e)(2)(C)(i)-(iv).) The list of disqualifying prior strike convictions, referred to as "super strikes," is set forth in section 667, subdivision (e)(2)(C)(iv). (*People v. Johnson, supra*, 61 Cal.4th at pp. 681-682.) The definition of a super strike conviction includes any " 'sexually violent offense,' " as defined in subdivision (b) of section 6600 of the Welfare and Institutions Code; oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than the defendant, as defined by section 288a; as well as "[a]ny serious or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv)(I), (II), & (VIII).) The Reform Act provides that these disqualifying super strikes must be pleaded and proven by the prosecution. (*People v. Frierson, supra*, 4 Cal.5th at p. 231.)

### 2. *Background facts*

In addition to the charged offense, the information alleged that defendant suffered prior serious or violent felony convictions for "PC261," "PC288A," and "PC209(b)." The information alleged these prior convictions "pursuant to Penal Code section(s) 667(b) through (i)," the Three Strikes law.

At trial, the prosecution introduced evidence of defendant's section 969b packet. The jury subsequently found true that defendant suffered prior serious or violent felony convictions for "Penal Code 261 (Forcible Rape)," "Penal Code 288A (Forcible Oral Copulation)," and "Penal Code 209(b) (Kidnapping for Purposes of Rape, Sodomy or Oral Copulation)."

The initial probation report recommended that defendant be sentenced to a total determinate sentence of eight years, consisting of the upper term of four years, doubled under the Three Strikes law. However, because at least one of defendant's prior convictions qualified as a super strike, the trial court determined that defendant should instead be sentenced under the Three Strikes law. The court continued the sentencing hearing so that a new probation report could be prepared. The probation officer subsequently filed a new probation report recommending that defendant be sentenced to an indeterminate term of 25 years to life.

At the continued sentencing hearing, the court denied defendant's motion to dismiss his prior strike convictions under *Romero, supra*, 13 Cal.4th 497, and sentenced defendant to an indeterminate term of 25 years to life pursuant to section 667, subdivision "(e)(2)(C)(VIII)," which presumably was intended to refer to (e)(2)(C)(iv)(VIII). Defense counsel did not object to the imposition of the indeterminate life sentence.

B.    *Analysis*

Defendant does not dispute that his prior convictions make him eligible for sentencing under the Three Strikes law. Nevertheless, he argues that his 25-year-to-life indeterminate sentence must be reversed because he was not adequately notified of the prosecution's intent to seek a third strike sentence for the charged nonserious, nonviolent felony offense. Defendant asserts that the charging document violated the Three Strikes law and due process because it did not specifically allege that the prosecution intended to seek a third strike sentence pursuant to one of the enumerated exceptions in section 667, subdivision (e)(2)(C)(iv). The People counter that defendant forfeited this claim by

16

failing to object below and that, in any event, the claim lacks merit.  Alternatively, they assert that any error was harmless.

We need not reach the forfeiture issue.  Because defendant also raises an ineffective assistance claim, we will exercise our discretion to address the issue on the merits (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1016, fn. 12; *People v. Riel* (2000) 22 Cal.4th 1153, 1192), and conclude that notice was adequate.

We begin with the text of the law, which presents an issue of statutory interpretation subject to our independent review.  (*People v. Bolter* (2001) 90 Cal.App.4th 240, 244.)  Our fundamental task in construing the statute is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " (*Martinez v. Combs* (2010) 49 Cal.4th 35, 51.)  In this search for legislative intent, " '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the [lawmakers] meant what [they] said, and the statute's plain meaning governs.' " (*Ibid*.)

The relevant statutory language provides:  "If a defendant has two or more prior serious or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced [as a second strike defendant] unless the prosecution pleads and proves" one or more enumerated disqualifying exception applies.  (§ 667, subd. (e)(2)(C).)

The text of section 667, subdivision (e)(2)(C) thus imposes two pleading and proof requirements:  "The first requires the prosecution to plead and prove that the defendant has two or more prior strikes.  This is plainly necessary because subdivision (e)(2)(C) applies only if the defendant has two or more prior strikes and the current offense is not a strike.  [Citation.]  The second pleading and proof requirement requires the prosecution to plead and prove that 'any' of the exceptions to second strike sentencing eligibility listed

in subdivision (e)(2)(C)(i) through (iv) apply." (*People v. Tennard* (2017) 18 Cal.App.5th 476, 486, italics omitted (*Tennard*).)

Defendant argues *Tennard* requires a prosecutor seeking to invoke an exception under section 667, subdivision (e)(2)(C) to specifically state that it will seek a "third-strike sentence pursuant to one of the [enumerated] disqualifying factors." However, the court in *Tennard* was careful to observe that "[t]he plain language of section 667, subdivision (e)(2)(C) only requires the prosecution to 'plead and prove' that 'any' of the exceptions to second strike sentencing eligibility set forth in subparagraphs (i) through (iv) apply. Neither subdivision (e)(2)(C) nor any other part of section 667 requires the prosecution to *specifically* 'plead and prove' that an exception applies by using any particular language or by referencing the particular subparagraph of the exception or disqualifying factor." (*Tennard, supra*, 18 Cal.App.5th at p. 486, original italics.) We agree.

Under the statute's plain language, the prosecution either must "plead and prove" that the defendant's current conviction is for an offense described in subdivision (e)(2)(C)(i) through (iii) of section 667, *or*, as relevant here, that the defendant previously suffered a conviction for one of the felonies described in subdivision (e)(2)(C)(iv)(I) through (VIII). Nothing more is required.[6]

Applying section 667, subdivision (e)(2)(C) here, the prosecution was not required to specifically plead and prove that defendant could face an indeterminate life sentence even if his current offense was not a serious or violent felony. (See *Tennard, supra*, 18

---

[6] Although the information in *Tennard* included a reference to section 667, subdivision (e)(2)(A), it also specifically alleged forcible rape as a super strike offense, identified by its code section (§ 261, subd. (a)(2)) and as "rape by force," and the court held this "sufficiently notified defendant that the prosecution would seek to disqualify him from second strike sentencing eligibility . . . ." (*Tennard, supra*, 18 Cal.App.5th at p. 487.) *Tennard* does not persuade us that an information, in addition to alleging a super strike, also must refer to subdivision (e)(2)(A) or (C) to satisfy due process.

Cal.App.5th at pp. 482, 488.)  It merely had to plead and prove that "defendant suffered a prior serious or violent felony conviction" for one of the felonies described in subdivision (e)(2)(C)(iv).  The information here met this standard.  It identified prior strike convictions for "PC261," "PC288A," and "PC209(b)," and referred to section 667, subdivision (b) through (i).  These allegations were sufficient to satisfy the statute's pleading and proof requirements because they put defendant on notice that his prior convictions would be used as the basis for Three Strikes sentencing.  A specific reference to section 667, subdivision (e)(2)(A) or (C) was not required.

Defendant argues that the prosecution failed to adequately "plead and prove" that any of his prior felony convictions were super strikes.  Not so.  Under section 667, subdivision (e)(2)(C)(iv)(VIII), "[a]ny serious or violent felony offense punishable in California by life imprisonment or death" qualifies as a super strike.  A violation of section 209, subdivision (b) is a serious or violent felony punishable by life imprisonment.[7]  (§§ 209, subd. (b), 1192.7, subd. (c)(7) & (20), 667.5, subd. (c)(7) & (14).)  As such, it qualifies as a super strike offense.

"Any" super strike conviction renders a defendant ineligible for sentencing as a second strike defendant.  (§ 667, subd. (e)(2)(C)(iv).)  It therefore is unnecessary for us to decide whether the descriptions of the other convictions were adequate.  The kidnapping

---

[7]      The jury verdict form erroneously refers to defendant's conviction as "kidnapping for purposes of rape, sodomy or oral copulation."  Although current section 209, subdivision (b) applies to kidnapping for purposes of rape, sodomy, or oral copulation, at the time of the offense and conviction, the statute formerly provided that "[a]ny person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole."  (See former § 209, subd. (b); Stats. 1990, ch. 55, § 3; Stats. 1997, ch. 817, § 2.)  Nonetheless, since the jury found true the allegation that defendant suffered a serious or violent felony conviction under section 209, subdivision (b), consistent with the jury instructions, the defect in the verdict form was harmless.  (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1244.)

19

for robbery conviction (former § 209, subd. (b)) itself provided adequate notice that defendant was disqualified from the benefits of the Reform Act's more lenient, second strike sentencing.

Defendant's argument that he had a due process right to notice that the prosecution would seek an indeterminate term on his current nonstrike felony fares no better. "[A] defendant's due process right to be informed of the charges is satisfied when the charging document affords the defendant 'a reasonable opportunity to prepare and present a defense' and the defendant 'is not taken by surprise by the evidence offered at trial.' " (*Tennard, supra*, 18 Cal.App.5th at p. 487; see *People v. Robinson* (2004) 122 Cal.App.4th 275, 282.) But the due process clause does not require "rigid code pleading or the incantation of magic words." (*People v. Anderson* (2020) 9 Cal.5th 946, 957.) An information need not plead a specific numerical subdivision to be considered adequate. It merely has to provide the defendant with fair notice of the potential for an enhanced sentence. (*Id*. at p. 953.) The People's information sufficiently gave defendant notice that he faced a possible third strike sentence if his prior strike convictions were proven.

The cases cited by defendant are readily distinguishable. In *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), the case on which defendant most heavily relies, the appellate court held that the pleading and proof requirements of the One Strike law (§ 667.61) and due process were violated where, after the information alleged a specific gun-use enhancement, the trial court at sentencing instead relied on an *unpled* multiple-victim circumstance to support a one strike sentence. (*Mancebo, supra*, at pp. 738, 742-743, 753.) Here, in contrast, the prosecution alleged the disqualifying super strike conviction in the information as the basis for imposing a sentence under the Three Strikes law.

Moreover, in *Mancebo*, the court rejected the notion that an information requires the level of specificity that defendant asserts is required, stating that "we do not here hold that the specific numerical subdivision of a qualifying One Strike circumstance . . .

20

necessarily must be pled. We simply find that the express pleading requirements of section 667.61, subdivisions (f) and (i), read together, require that an information afford a One Strike defendant fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing." (*Mancebo, supra*, 27 Cal.4th at pp. 753-754.) Adequate notice, the court continued, "can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof. We do not purport to choose among them." (*Mancebo*, at p. 754; see also *People v. Nguyen* (2017) 18 Cal.App.5th 260, 267 [information need not cite applicable enhancement statute].) Thus, the Supreme Court implicitly approved the approach used here— identification of the qualifying circumstance or factor, along with a reference to the governing sentencing scheme.

The other cases relied upon by defendant are equally distinguishable. (See *People v. Anderson, supra*, 9 Cal.5th at pp. 951, 953-955 [court erred by imposing enhancements in connection with counts as to which the enhancements were not alleged]; *People v. Sawyers* (2017) 15 Cal.App.5th 713, 718, 721, 726-727 [three strikes sentence impermissible where information made no reference to the Three Strikes law]; *People v. Wilford* (2017) 12 Cal.App.5th 827, 836-837, 840 [court erred in sentencing defendant under section 273.5, subdivision (f)(1) where prosecutor pleaded enhancement only under section 273.5, subdivision (h)(1)]; *People v. Nguyen, supra*, 18 Cal.App.5th at pp. 266-267 [because charging language stated fact was alleged under a particular statute, court erred in using that fact to sentence defendant under a different statute].)

In any event, the record before us establishes that defendant knew that he faced the possibility of a super strike sentence. During a posttrial *Marsden*[8] hearing, defense counsel testified that he sent defendant a letter before trial informing him that his prior super strike convictions could qualify him for sentencing as a third strike defendant.[9] Defendant "had that information when he chose to move forward to trial." Thus, even if we assume error, there was no prejudice. (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 1001.)

IV

*Sufficiency of the Evidence*

Defendant next challenges the sufficiency of the evidence to support the finding that his prior convictions were super strikes. We readily reject this contention.

Defendant's section 969b packet, and the corresponding testimony of Arin Muñoz, a case records manager at the prison, provided substantial evidence to support the truth of the finding that defendant suffered the prior convictions. (*People v. Elmore* (1990) 225 Cal.App.3d 953, 960; accord, *People v. Delgado* (2008) 43 Cal.4th 1059, 1066, superseded by statute on unrelated grounds as stated in *People v. Frahs* (2018) 27 Cal.App.5th 784, 795, superseded by statute as stated in *In re M.S.* (2019) 32 Cal.App.5th 1177, 1191.)

The court, not the jury, determines whether a prior conviction qualifies as a super strike. (*People v. Kelii* (1999) 21 Cal.4th 452, 455-456.) Because a violation of section 209, subdivision (b) is punishable by life imprisonment, the trial court properly

---

[8]     *People v. Marsden* (1970) 2 Cal.3d 118.

[9]     We do not breach confidentiality with this limited revelation from the *Marsden* hearing. By asking the court to reverse his sentence based on ineffective assistance of counsel, defendant waived the attorney-client privilege with respect to his claim that he lacked notice of a potential super strike sentence. (*People v. Dennis* (1986) 177 Cal.App.3d 863, 873.)

concluded that the offense is a super strike.  (§ 667, subd. (e)(2)(C)(iv)(VIII).)  As discussed above, this conclusion renders it unnecessary for us to consider defendant's other convictions.

V

*Fees and Fines*

A.    *Presentence investigation report fee*

Defendant contends the trial court erred in imposing a $600 presentence investigation report fee under former section 1203.1b because the record contains insufficient evidence of his ability to pay the fee.

While this appeal was pending, the Legislature enacted Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Assembly Bill 1869), which repealed section 1203.1b, effective July 1, 2021.  Assembly Bill 1869 also added a new section 1465.9, which provided: "(a) On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 3010.8, 4024.2, and 6266, . . . shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."  (§ 1465.9, former subd. (a); Stats. 2020, ch. 92, § 62.)

Assuming it applies, Assembly Bill 1869 affects (or potentially affects) defendant in two ways.  First, the balance of any fee owed by defendant under section 1203.1b is unenforceable and uncollectible.  (§ 1465.9, subd. (a); *People v. Clark* (2021) 67 Cal.App.5th 248, 259 (*Clark*).)  Second, the portion of the judgment imposing the presentence investigation report fee must be " 'vacated.' "  (*Clark, supra*, at p. 259.)

Because Assembly Bill 1869 would require us to vacate a portion of a previously imposed sentence, based on an offense committed before the effective date of the new law, we must decide whether the new law applies under *In re Estrada* (1965) 63 Cal.2d 740.  We conclude that it does.  By its plain language, Assembly Bill 1869 is an ameliorative change in the law intended to apply to every case (to which it

23

constitutionally can be applied). (*Clark, supra*, 67 Cal.App.5th at pp. 259-260.) Because the judgment against defendant is not yet final for purposes of *Estrada*, the amended law can be applied to him. (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 [discussing when case is final for purposes of *Estrada*]; *People v. Esquivel* (2021) 11 Cal.5th 671, 678-680 [same].) Therefore, the portion of the judgment imposing the presentence investigation report fee must be vacated.

        B.     *Restitution fine*

Defendant also contends the court erred in imposing a $300 restitution fine (§ 1202.4, subd. (b)) without an adequate showing that he had the present ability to pay it. Here we find no error.

By statute, a restitution fine set at the $300 minimum is mandatory absent "compelling and extraordinary reasons." (§ 1202.4, subds. (b), (c).) The statute expressly states that a defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose the minimum fine. (§ 1202.4, subd. (c).)

To justify a departure from this statutory mandate, defendant relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held that a court must stay the execution of any restitution fine until and unless the People demonstrate the defendant has the present ability to pay it. (*Id*. at p. 1172.) We are not persuaded the analysis in *Dueñas* is correct. Our Supreme Court is now poised to resolve this issue, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844.) In the meantime, we join those authorities that have concluded there is no due process requirement that the court make an ability to pay determination before imposing a punitive restitution fine. (*Kopp, supra*, 38 Cal.App.5th at pp. 96-97, rev.gr.; see also *People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-280; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069.) Thus, we decline to stay execution of the restitution fine.

24

Although not raised by either party, we note the trial court attempted to "waive" the $40 court operations assessment (§ 1465.8) and the $30 court facilities assessment (Gov. Code, § 70373). These are mandatory assessments. Accordingly, we will modify the judgment to impose them. (*People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2.)

## DISPOSITION

The judgment is modified to strike the $600 presentence investigation report fee (former § 1203.1b) and to impose the mandatory $40 court operations assessment (§ 1465.8) and $30 court facilities assessment (Gov. Code, § 70373). The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.


     KRAUSE     , J.


I concur:


     BLEASE     , Acting P. J.

25

MAURO, J., Concurring and Dissenting.

I fully concur in the majority opinion except for part V. B. of the Discussion, pertaining to defendant's challenge to the imposed restitution fine, as to which I dissent in part.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held it is improper to impose certain fines or assessments without determining defendant's ability to pay. (*Id*. at pp. 1168, 1172.) Although some courts have subsequently criticized *Dueñas*'s legal analysis (see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946), *Dueñas* remains citable precedent. Until the California Supreme Court has had an opportunity to resolve the current split in authority, I believe it is appropriate in certain cases to remand the matter to give the trial court an opportunity to consider defendant's ability to pay.

Here, defendant's trial counsel asserted *Dueñas* and the trial court considered defendant's ability to pay the restitution fine and assessments. The trial court imposed the minimum restitution fine but waived the assessments. On this record, I would not modify the judgment to impose the assessments.



       MAURO      , J.